[Cite as *Wright v. Ohio Dept. of Job & Family Servs.*, 2013-Ohio-2260.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

GREGORY A. WRIGHT

     Appellant

     v.

DIRECTOR, OHIO DEPT. OF JOBS &
FAMILY SERVICES, et al.

     Appellees

C.A. No.     12CA010264

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    11CV172664

DECISION AND JOURNAL ENTRY

Dated: June 3, 2013

HENSAL, Judge.

{¶1} Plaintiff-Appellant, Gregory Wright, appeals from the judgment of the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2} Gregory Wright was employed as a truck driver by Schneider National Carriers, Inc. ("Schneider") from July 6, 2010 until August 20, 2010. On August 20, 2010, Wright quit his job while in the middle of a delivery when he left his truck at a Schneider terminal in Seville, Ohio, and told his employer he would not drive again until it assigned him a local route.

{¶3} Wright filed an application for unemployment benefits, which was assigned two different identification numbers as his qualifying employment period overlapped benefit years. The Ohio Department of Job and Family Services ("ODJFS") initially allowed his application for benefits. This decision was reversed on redetermination when the agency found that Wright quit Schneider without just cause.

{¶4}    Wright filed a timely appeal of the redetermination decision and the Ohio Department of Job and Family Services transferred jurisdiction of the case to the Unemployment Compensation Review Commission ("UCRC") where his claim was assigned two docket numbers (C2010-012991 and C2010-014088) with all substantive determinations being made under the C2010-014088 docket number.  On February 10, 2011, a telephone hearing was held before a UCRC hearing officer.  The hearing officer issued a decision on February 11, 2011, that affirmed the redetermination decision that Wright quit Schneider without just cause.

{¶5}    Wright filed a request for review of C2010-012991 to the UCRC that was disallowed on May 11, 2011, and a request for review of C2010-014088 that was disallowed on June 2, 2011.  Wright filed an appeal in the Lorain County Court of Common Pleas on June 29, 2011.  He attempted to appeal both UCRC docket numbers, and requested that the court merge both cases.   The trial court did not expressly rule on Wright's request to merge the cases.  The record reflects that only the appeal for docket number C2010-014088 was timely.  On July 2, 2011, the court issued a judgment entry that affirmed the UCRC decision without referencing the corresponding UCRC docket number.

{¶6}    Wright filed a timely appeal of the trial court decision, and raises two assignments of error for our review.  For ease of analysis, this Court combines his two assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT'S DECISION AFFIRMING [THE] ORDER OF THE UNEMPLOYMENT COMPENSATION BOARD (UCBR) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**ASSIGNMENT OF ERROR II**

[THE] TRIAL COURT'S DECISION AFFIRMING [THE] ORDER OF THE UNEMPLOYMENT COMPENSATION REVIEW BOARD (UCBR) WAS UNLAWFUL AND UNREASONABLE.

**{¶7}** Wright argues that the trial court erred in affirming the UCRC decision as that decision was unreasonable, unlawful and against the manifest weight of the evidence. The crux of his argument is that the UCRC erred when it found he quit his job without just cause. He alleges that the evidence before the UCRC demonstrated that he was hired to drive a local route, and his employer knew and agreed that he could only perform the over-the-road regional route position temporarily as it was necessary for him to be home every night due to his medical conditions and to care for his special needs child. He further argues that he was deprived of his due process rights when the UCRC hearing officer failed to elicit the testimony of a subpoenaed witness at the telephone hearing.

**{¶8}** When reviewing the trial court's decision, "[t]his Court is required to focus on the decision of the Review Commission, rather than that of the common pleas court, in unemployment compensation cases." *Moore v. Comparison Market, Inc.*, 9th Dist. No. 23255, 2006-Ohio-6382, ¶ 8. Pursuant to R.C. 4141.282(H), appellate review of an UCRC decision is limited as follows:

> The court shall hear the appeal on the certified record provided by the commission. If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission.

*Lang v. Dir., Ohio Dept. of Job & Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366 ¶ 11 (applying standard of review to all appellate courts). "A reviewing court may not reverse the commission's decision simply because 'reasonable minds might reach different conclusions.'"

*Id*., quoting *Williams v. Ohio Dept. of Job & Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2897, ¶ 20. Additionally, an appellate court is "preclude[d] * * * from making factual findings or weighing the credibility of witnesses." *Moore* at ¶ 7. This Court's role is to ascertain whether evidence in the certified record supports the UCRC decision. *Id*. at ¶ 9.

{¶9} The UCRC found that Wright quit his job without just cause, thus rendering him ineligible for unemployment benefits pursuant to R.C. 4141.29(D)(2)(a). The term "just cause" means "that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Williams v. Ohio Dept. of Job and Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2897, ¶ 22. The employee has the burden to prove he is entitled to unemployment benefits under R.C. 4141.29(D)(2)(a). *Irvine v. Unemp. Comp. Bd. of Review*, 19 Ohio St.3d 15, 17 (1985).

{¶10} Wright maintains that he was hired as a local route driver. He argues that the UCRC finding that Schneider hired him as an over-the-road regional route driver and made no promises about the availability of a local route is against the manifest weight of the evidence. When reviewing the manifest weight of the evidence, "[t]he reviewing court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

{¶11} Wright was hired after he responded to a Schneider advertisement for drivers to run a local route between train yards in Cleveland and Cincinnati. Mike Doss, a Schneider fleet manager who interviewed Wright for the position, testified that an over-the-road regional

position was not discussed during the initial interview. Wright received a conditional offer of employment via email that listed several conditions he needed to complete, including attendance at orientation/training. Doss told Wright before he began orientation that the company had yet to secure the local route contract and that there was no set timeframe when that would occur. Doss instead offered Wright a regional driver position that involved overnight travel to Indiana, Pennsylvania, and Kentucky, which would necessitate him "being out in the truck" four nights per week. Wright accepted the regional route job. While Wright maintains that he was told he would be home two nights during the week, Doss testified he was told that the company would get him home during the week when possible.

{¶12} Wright argues that he only agreed to drive the regional route position temporarily until the local route was available. He spoke to Schneider representatives "[e]veryday" about the availability of the local route, and was asked to keep driving the regional route because the local contract was not finalized. As of the February 10, 2011 hearing, the local route contract still was not finalized. Wright, however, never drove a local route for Schneider other than when he was paired with another driver during his training period. Once he completed his training and was permitted to drive on his own, he only drove the regional route. UCRC found "the employer's testimony that no promises were made to the claimant regarding a local route to be credible." After a careful review of the record, we are not persuaded that the UCRC finding that Wright was hired for a regional route is against the manifest weight of the evidence as there is competent, credible evidence to support that conclusion.

{¶13} Wright further argues that the UCRC was unreasonable in finding that he failed to submit documentation of his medical conditions. The UCRC decision states that, "[w]hile the claimant argues that he had a medical condition, and he had a special needs son that (sic)

required him to be at home every night, no medical documentation was ever provided to the employer, and no medical documentation has been submitted to the State that this job posed a risk to the claimant, or his family." The employer acknowledged one occasion when Wright was routed back home when he forgot his medication. There is no evidence, however, that he informed his employer of his medical conditions and son's needs during the term of his employment.

{¶14} Wright submitted a report dated December 13, 2010 from his treating physician to the UCRC, which stated that:

> Mr. Wright does not have any physical limitations other than it would be extremely difficult for him to have to sit for long periods of time without any rest or movement especially such as a long-distance trucker driver would need to do. In addition, he would need to be able to sleep in a regular bed on a regular basis were he to keep his back from locking up or causing him more pain and disability. He is also on medications that require monitoring * * * and would require him to be home or at least near to home for * * * up to 4-6 times a year.

There is no evidence this report, or any other medical documentation, was submitted to Schneider during the course of Wright's employment. Further, this report does not suggest that there was a risk to his health in performing the regional route driver duties. The report specifically states that Wright does not have any physical limitations with the exceptions of difficulty sitting for long periods of time, the need to sleep in a regular bed on a regular basis, and medication monitoring four to six times per year. The report also does not define what constitutes a "regular basis" of sleeping in a regular bed.

{¶15} The Ohio Supreme Court has stated that:

> An employee's voluntary resignation on the basis of health problems is without just cause * * * when the employee is physically capable of maintaining a position of employment with the employer, but fails to carry her burden of proving that she inquired of her employer whether employment opportunities were available which conformed to her physical capabilities and same were not offered to her by the employer.

*Irvine*, 19 Ohio St.3d 15 at syllabus. While Wright testified that he followed up "[e]veryday" with Schneider on the status of the local route position, there is no evidence that he advised Schneider prior to his resignation that his medical conditions prevented him from continuing as a regional route driver. There is also no evidence that Wright asked Schneider whether it had any such jobs available that conformed to his physical abilities, or that Schneider failed to offer him such an opportunity if one existed. The fact that Wright never advised Schneider prior to his resignation that his medical conditions prevented him from continuing as a regional route driver is fatal to his claim for unemployment benefits. *King v. State Farm Mut. Auto Ins. Co.*, 112 Ohio App.3d 664, 669 (6th Dist.1996) (upholding the denial of unemployment benefits when employee "never fully apprised [her employer] of her health problems or the cause of those problems until she quit her job, thereby preventing her employer from offering her alternate forms of employment.").

{¶16} This is not an instance where the medical condition was diagnosed after the date of hire. Instead, Wright accepted the regional route position with full knowledge of his medical conditions and their impact on his physical abilities. Wright knew when he accepted the regional route position that the local route contract was not finalized and that there was no definitive time frame for its completion.

{¶17} Wright further suggests that the UCRC failed or refused to consider the medical report. A plain reading of the UCRC decision does not suggest that it failed to consider the medical report. Rather, the UCRC decision indicates that the hearing officer did not agree with Wright's assertion that the report proved his medical conditions posed such a risk as to prevent him from performing the regional route driver job.

{¶18} There is no evidence that Wright informed Schneider orally or in writing about his medical conditions prior to terminating his employment. The medical report Wright submitted in support of his benefits claim also does not definitively establish that his medical conditions impeded his continuation as a regional route driver. Accordingly, there was competent, credible evidence in the record to support the UCRC's decision concerning the impact of Wright's medical conditions on his employment. This Court holds that the UCRC finding that Wright failed to submit documentation that supported his claim he could not perform the job duties due to a medical reason was not unreasonable, unlawful or against the manifest weight of the evidence.

{¶19} Wright further contends that the UCRC violated his statutory due process rights and acted unreasonably by failing to elicit the testimony of a subpoenaed witness. On December 20, 2010, Wright submitted a written request to the UCRC that it issue a subpoena to the Schneider employee who allegedly trained him for a local route position. The UCRC issued the subpoena on January 31, 2011, but the subpoenaed employee did not appear at the telephone hearing held on February 10, 2011.

{¶20} Wright, however, failed to object to the absence of the witness at the time of the hearing. It was not until the UCRC issued an unfavorable decision that Wright objected. In the case of *Harrison v. Penn Traffic Co.*, 10th Dist. No. 04AP-728, 2005-Ohio-638, the claimant argued that he was denied due process because the UCRC hearing officer failed to enforce a subpoena for the production of documents issued to his employer. *Id*. at ¶ 22-23. The claimant elicited through cross-examination testimony that the employer failed to produce the documents, but did not request a continuance of the hearing. *Id*. at ¶ 23. The Tenth District held that there

was no reversible procedural error as the "[claimant's] seeming acquiescence to not enforcing the subpoenas largely negates the hearing officer's non-action." *Id*. at ¶ 26.

**{¶21}** Just as in *Harrison*, Wright failed to object to the absence of the witness or request a continuance of the hearing. He also failed to request that the UCRC pursue a contempt proceeding against the witness as authorized in Revised Code Section 4141.17. *See also* Ohio Adm.Code 4146-15-03. "An appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Williams*, 51 Ohio St.2d 112 (1977), paragraph one of the syllabus. Because it is well settled that an applicable objection must be made at the hearing level, Wright has forfeited this argument on appeal. *Smith v. Richfield Twp. Bd. Of Zoning Appeals*, 9th Dist. No. 25575, 2012-Ohio-1175, ¶ 33.

**{¶22}** "An issue otherwise waived may be brought up on appeal through the plain error doctrine." *Ponder v. Kamienski*, 9th Dist. No. 23270, 2007-Ohio-5035, ¶ 18. Wright, however, does not argue plain error on appeal, and this Court declines to create such an argument on his behalf. *See State v. Zepeda-Ramires*, 9th Dist. No. 12CA010275, 2013-Ohio-1224, ¶ 11.

**{¶23}** Because the UCRC decision is not unlawful, unreasonable, or against the manifest weight of the evidence, the trial court did not err in affirming the decision. Accordingly, both of Wright's assignments of error are overruled.

### III.

**{¶24}** Wrights's two assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
CONCURS.

BELFANCE, P. J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

PATRICK D. RILEY, Attorney at Law, for Appellant.

MICHAEL DEWINE, Ohio Attorney General, and YVONNE TERTEL, Assistant Attorney General, for Appellee.