[Cite as *Smith v. Ohio Dept. of Job & Family Servs.*, 2015-Ohio-5045.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| BOBBY E. SMITH | C.A. No.    15CA010734 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DIRECTOR, OHIO DEPARTMENT OF JOB AND FAMILY SERVICES | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO CASE No.    14 CV 184270 |
| Appellant | |

DECISION AND JOURNAL ENTRY

Dated: December 7, 2015

---

MOORE, Judge,

{¶1}   Defendant-Appellant, the Director of the Ohio Department of Job and Family Services ("ODJFS"), appeals from the judgment of the Lorain County Court of Common Pleas. This Court reverses the trial court's judgment and enters judgment affirming the decision of the Unemployment Compensation Review Commission ("the Review Commission").

I.

{¶2}   Bobby Smith began receiving unemployment benefits in 2011.  Well into his third year of receiving benefits, ODJFS determined that Mr. Smith had received benefits to which he was not entitled.  Specifically, it determined that, between September 30, 2012, and November 10, 2012, he had underreported his weekly income and, in doing so, had engaged in fraudulent misrepresentation.  ODJFS ordered Mr. Smith to repay $997 in overpaid benefits, as well as a mandatory penalty in the amount of $249.25.  It also determined that he would be ineligible for 12 weeks' worth of benefits, should he file any weekly claims for the next six years.  Mr. Smith

appealed ODJFS' initial determination, but its Director upheld its decision on redetermination. Mr. Smith then filed an appeal with the Review Commission.

{¶3} On April 2, 2014, a telephone hearing was held before a hearing officer for the Review Commission. The hearing officer received testimony and determined that Mr. Smith had fraudulently misrepresented his weekly earnings by underreporting them during the period outlined above. Consequently, the hearing officer affirmed the redetermination issued by ODJFS' Director. Mr. Smith asked the Review Commission to further review the matter, and the Review Commission granted his request. Nevertheless, the Review Commission ultimately affirmed the decision of its hearing officer.

{¶4} Mr. Smith filed an appeal in the Lorain County Court of Common Pleas to challenge the Review Commission's decision. Both sides filed written briefs, and the trial court issued a decision upon their briefs. The court affirmed the Review Commission's determination that Mr. Smith had received benefits to which he was not entitled, but modified the determination in part. Because it determined that Mr. Smith had been "overpaid unemployment benefits * * * for reasons other than fraudulent misrepresentation under R.C. 4141.35(B)," the court eliminated the penalty associated with Mr. Smith's overpayment. Consequently, the court only affirmed the portion of the determination that ordered Mr. Smith to repay $997 in overpaid benefits.

{¶5} ODJFS now appeals from the trial court's judgment and raises one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE COURT OF COMMON PLEAS ERRED BY MODIFYING THE DECISION OF THE UNEMPLOYMENT COMPENSATION REVIEW

COMMISSION TO FIND THAT THE OVERPAYMENT OF UNEMPLOYMENT COMPENSATION BENEFITS TO [MR.] SMITH WAS NOT THE RESULT OF FRAUDULENT MISREPRESENTATION PURSUANT TO OHIO REVISED CODE [] 141.35(A).

{¶6} In its sole assignment of error, ODJFS argues that the trial court erred when it modified the decision of the Review Commission. Specifically, it argues that the court should have deferred to the Review Commission's determination that Mr. Smith engaged in fraudulent misrepresentation when he underreported his weekly earnings. We agree.

{¶7} When reviewing a trial court's decision in an unemployment case, "[t]his Court is required to focus on the decision of the Review Commission, rather than that of the common pleas court * * *." *Moore v. Comparison Market, Inc.*, 9th Dist. Summit No. 23255, 2006-Ohio-6382, ¶ 8. This Court "may only reverse the Review Commission's decision if it is unlawful, unreasonable, or against the manifest weight of the evidence." *Myers v. Ohio Dept. of Job & Family Servs.*, 9th Dist. Wayne No. 09CA0024, 2009-Ohio-6023, ¶ 5, citing R.C. 4141.282(H). "The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the [Review Commission's] decision." *Irvine v. Unemp. Comp. Bd. of Review*, 19 Ohio St.3d 15, 18 (1985). "[T]he resolution of factual questions is chiefly within the Review Commission's scope of review," *Myers* at ¶ 5, and this Court may not weigh the credibility of the witnesses. *Moore* at ¶ 7. *See also Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 696 (1995). Instead, this Court must simply "ascertain whether evidence in the certified record supports the [Review Commission's] decision." *Wright v. Ohio Dept. of Job & Family Servs.*, 9th Dist. Lorain No. 12CA010264, 2013-Ohio-2260, ¶ 8.

{¶8} R.C. 4141.35(A) outlines the remedial measures ODJFS may employ when its Director finds that a benefits recipient has engaged in "fraudulent misrepresentation * * * with

the object of obtaining benefits to which the * * * recipient was not entitled * * *."[1]  "[F]or purposes of [R.C. 4141.35], fraud simply refers to the making of a statement that is false, where the party making the statement does or should know that it is false."  (Second alteration sic.) (Internal quotations and citation omitted.)  *Barilla v. Director, Ohio Dept. of Job & Family Srvs.*, 9th Dist. Lorain No. 02CA008012, 2002-Ohio-5425, ¶ 36.  The party's "subjective intent * * * is irrelevant to a determination of whether [he or she] made fraudulent misrepresentations pursuant to R.C. 4141.35."  *Id.* at ¶ 35.

{¶9}     At the hearing before the Review Commission, Mr. Smith did not dispute that he underreported his weekly earnings during a six-week period.  Specifically: (1) for the week ending on October 6, 2012, he earned $79.54, but reported $65.45; (2) for the week ending on October 13, 2012, he earned $78.93, but reported $36.58; (3) for the week ending October 20, 2012, he earned $121.81, but reported $46.20; (4) for the week ending October 27, 2012, he earned $95.10, but reported $38.50; (5) for the week ending November 3, 2012, he earned $64.91, but reported $51.98; and (6) for the week ending November 10, 2012, he earned $360.75, but reported $57.75.  Dinah Townsend, a fraud investigator in ODJFS' Benefit Payment Control Unit, testified that Mr. Smith was required to report his earnings each week via the internet.  She explained that, each time Mr. Smith filed his earning reports online, he had to certify that the amounts he entered represented his earnings.  As such, Mr. Smith had certified all

---

[1] We note that ODJFS also directs this Court to R.C. 4141.29(D)(2)(d).  Former R.C. 4141.29(D)(2)(d) prohibited individuals from knowingly making false statements or omitting material facts to secure benefits.  Currently, however, the subdivision pertains to individuals who "become unemployed by reason of commitment to any correctional institution."  The statutory language to which ODJFS directs this Court ceased to exist in 2005, when the General Assembly struck it from the statute.

of the aforementioned amounts, despite the fact that they did not represent the amounts that he had actually earned.

{¶10} Ms. Townsend testified that Mr. Smith was the subject of two fraud investigations. The first investigation concerned benefits that he received from July 14, 2012, to September 29, 2012. When ODJFS discovered that Mr. Smith's actual earnings for those weeks exceeded his reported earnings, ODJFS issued him a notice of a potential issue and asked him to explain the discrepancy. Ms. Townsend testified that, on October 29, 2013, Mr. Smith responded to the notice, claiming that side effects he was experiencing from medication he had been prescribed may have caused him to inaccurately report his wages. She testified that the first investigation resulted in a "non-fraud determination," but caused her to review additional weeks of Mr. Smith's wages. Consequently, she conducted a second investigation that pertained to the benefits Mr. Smith received between September 30, 2012, and November 10, 2012.

{¶11} Ms. Townsend testified that her second investigation likewise resulted in a finding that Mr. Smith's actual earnings exceeded the amounts he had reported when he filed his weekly claims. Accordingly, on January 10, 2014, ODJFS issued another notice of a potential issue to Mr. Smith and asked him to explain the discrepancy. This time, however, he did not respond to the notice. Ms. Townsend testified that, because Mr. Smith did not respond to the notice, ODJFS automatically adjudicated the matter a fraud.

{¶12} Mr. Smith conceded that he had received unemployment benefits in 2004, 2005, 2006, 2007, 2011, 2012, and 2013, such that he was familiar with the system. He also conceded that he never responded to the notice that ODFJS issued him in January 2014, but claimed that he never received it. Mr. Smith testified that the thyroid medication he was prescribed during the benefits period in question here interfered with his mental faculties to a significant degree. He

attributed his mistakes in reporting his weekly earnings to the side effects he experienced from his medication. Yet, he did not introduce any evidence to document his medical problems or the purported side effects he experienced. He also admitted that he never sought assistance in submitting his weekly earnings. According to Mr. Smith, he did not seek assistance because, at the time he reported his earnings, he did not realize that he was having difficulties adjusting to his medication. He noted that he still had over $500 left in his account at the time that he allegedly falsified his earnings. He argued that there would have been no reason for him to secure additional benefits through fraud when he had not yet depleted the funds in his account. He further argued that, had he intended to defraud ODJFS, he would have reported zero earnings rather than just an incorrect amount of earnings.

{¶13} The Review Commission determined that Mr. Smith engaged in fraudulent misrepresentation when he certified his weekly earnings. Specifically, it determined that he underreported his earnings with the intent of obtaining benefits to which he was not entitled. As previously noted, a reviewing court "may only reverse the Review Commission's decision if it is unlawful, unreasonable, or against the manifest weight of the evidence." *Myers*, 2009-Ohio-6023, at ¶ 5. Having reviewed the record, we cannot conclude that the Review Commission's decision in this matter warrants reversal.

{¶14} To conclude that Mr. Smith obtained benefits as the result of a fraudulent misrepresentation, the Review Commission need only have found that (1) he made a false statement, and (2) either knew or should have known that the statement was false. *See Barilla*, 2002-Ohio-5425, at ¶ 36. Mr. Smith did not dispute that he underreported his income from September 30, 2012, to November 10, 2012. There also was no dispute that, each week that Mr. Smith submitted his earnings online, he had to certify that the amounts he entered were correct.

Because Mr. Smith repeatedly certified incorrect amounts, there was evidence in the record that he made false statements. Thus, the Review Commission's determination to that effect was not unlawful, unreasonable, or against the manifest weight of the evidence.

{¶15} As to whether Mr. Smith knew or should have known that his statements were false, we note that Mr. Smith's subjective intent was irrelevant. *See id.* at ¶ 35. The earning amounts that he reported varied greatly from the amounts he actually earned. During four of the six weeks in question, he earned more than double the amount of income that he reported. Although Mr. Smith claimed that the inaccuracies were caused by medication he was taking at the time, the hearing officer could have chosen to disbelieve his testimony. Mr. Smith admitted that he did not seek assistance with his earning reports, and he did not introduce any evidence to document his medical condition or the side effects he allegedly experienced. Further, the Review Commission hearing officer could reasonably have taken into account the fact that each and every discrepancy in reported earnings that was discovered inured to Mr. Smith's benefit. There were no instances in which he overreported his earnings. Accordingly, there is evidence in the record tending to show that he either knew or should have known that he made false statements. The Review Commission's finding to that effect was not unlawful, unreasonable, or against the manifest weight of the evidence.

{¶16} The trial court found that Mr. Smith received benefits to which he was not entitled "for reasons other than fraudulent misrepresentation * * *." The trial court did not elaborate as to what those reasons might be or explain why it found the Review Commission's decision was unlawful, unreasonable, or against the manifest weight of the evidence. "The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the [Review Commission's] decision." *Irvine*, 19 Ohio St.3d at 18. Because the record here supports the

decision of the Review Commission, the trial court erred by modifying it. The decision of the Review Commission must be affirmed, and the trial court's decision reversed. *See Myers*, 2009-Ohio-6023, at ¶ 9. Accordingly, ODJFS' sole assignment of error is sustained.

## III.

**{¶17}** ODJFS' assignment of error is sustained. We enter judgment, affirming the decision of the Review Commission. The judgment of the Lorain County Court of Common Pleas is reversed.

Judgment reversed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

CARLA MOORE
FOR THE COURT

HENSAL, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

BOBBY E. SMITH, pro so, Appellee.

MICHAEL DEWINE, Attorney General, and LAURENCE R. SNYDER, Assistant Attorney General, for Appellant.